J-S45037-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RAFAEL CRESPO, | |
| Appellant | No. 575 EDA 2016 |

Appeal from the Judgment of Sentence January 14, 2016
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007959-2013

BEFORE:  GANTMAN, P.J., PANELLA, J., and STRASSBURGER, J.[*]

MEMORANDUM BY STRASSBURGER, J.:        **FILED SEPTEMBER 11, 2017**

Rafael Crespo (Appellant) appeals from the judgment of sentence imposed after a non-jury trial where he was found guilty of first-degree murder, rape, sexual assault, corruption of minors, possession of an instrument of crime, and indecent assault.  We affirm.

The trial court summarized the factual and procedural history of this case as follows.

> On September 30, 1996, seventeen[-]year[-]old [A.M.], the victim herein, went missing.  At about 2:45 a.m., on October 2, 1996, police were alerted that a body had been found inside an abandoned house in the 1700 block of Hope Street.  Upon examining the body, which was [lying] face up and nude, police ascertained that the victim was dead.  Subsequent investigation revealed that the body was that of the victim herein.  An autopsy

---

[*] Retired Senior Judge assigned to the Superior Court.

on the victim's body revealed that she had been beaten and strangled to death.

The matter remained dormant for several years. In 2012, authorities received results of a DNA test performed on evidence recovered from the victim's body. It revealed, *inter alia*, that some of the evidence originated from [Appellant]. Upon receiving results of the DNA test[,] police tracked [Appellant] to Florida, where he was in custody.

On May 30, 2012, Philadelphia Homicide Detective John McDermott traveled to Florida to interview [Appellant]. Prior to commencing the formal interview of [Appellant], the detective administered *Miranda*[1] warnings to [Appellant] who thereafter answered the seven questions posed to him to ascertain whether he understood his rights in a manner indicating that he understood them and knowingly, intelligently, and voluntarily wished to waive them. During the subsequent interview, [Appellant] stated that after a night of drinking he met the victim, who appeared to be on her way to school, during the morning of September 30, 1996, and that he propositioned her for sex. She agreed to have sex with him for $20.00, after which she took him to an abandoned house where they had sex. Following this, according to [Appellant], the victim and he stood up and the victim asked him to choke her. He complied and as he was choking her with his hands and her shirt, her body went limp. He released his grip and she fell to the floor. After checking her to see if she was alive and getting no response, he told the detective that he got scared and left the house. He told the detective that when he did not see a story in the news about the incident he forgot about it.

Trial Court Opinion, 11/9/2016, at 2-3.

Appellant was charged with the aforementioned crimes. Prior to trial, Appellant requested the trial court suppress the statements given by

_____

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Appellant while incarcerated in Florida.[2]  The trial court heard testimony from the Detective McDermott with respect to this issue, and the trial court denied Appellant's motion.

After the non-jury trial, Appellant was convicted of all charges.  On January 14, 2016, Appellant was sentenced to, *inter alia*, life in prison without parole.  Appellant timely filed a notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant argues the trial court erred by denying his motion to suppress. Appellant's Brief at 4.  Appellant contends that based on the totality of the circumstances, specifically "the lengthy interrogation and the fact [Appellant] was incarcerated[,] combined to render [Appellant's] confession invalid as a matter of law." *Id*. at 10.

We review this issue mindful of the following.

> [O]ur standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted.  Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

---

[2] The certified record does not contain a written suppression motion.

***

It is well-established that when a defendant alleges that his confession was involuntary, the inquiry becomes not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess. The voluntariness of a confession is determined from a review of the totality of the circumstances surrounding the confession. The Commonwealth has the burden of proving by a preponderance of the evidence that the defendant confessed voluntarily.

When examining the voluntariness of a statement pursuant to the totality of the circumstances, a court should consider: the duration and means of the interrogation; the defendant's physical and psychological state; the conditions attendant to the detention; the attitude exhibited by the police during the interrogation; and all other factors that could drain a person's ability to resist suggestion and coercion. Additional relevant factors include: the accused's age and level of education and experience; his extent of previous experience with the police; whether the accused was advised of his constitutional rights; whether he was injured, ill, drugged, or intoxicated when he confessed; whether he was deprived of food, sleep or medical attention, and whether he was abused or threatened with abuse.

*Commonwealth v. Yandamuri*, 159 A.3d 503, 516-25 (Pa. 2017) (internal citations omitted).

At the suppression hearing, Detective McDermott testified that he traveled to Florida where Appellant was incarcerated for unrelated crimes. At 11:14 a.m. on May 30, 2012, Detective McDermott explained to Appellant that he had the right to remain silent; that anything he would say can and will be used against him; that he has the right to speak to an attorney before answering questions; and that he was entitled to a free attorney if he could not afford one. N.T., 9/3/2015, at 12-13. Detective McDermott

- 4 -

testified that Appellant responded that he did not wish to speak with an attorney and that he was willing to answer questions of his own free will. *Id*. at 13. Furthermore, Appellant signed his name across the written warnings. *Id*. at 16.

Questioning of Appellant began at 11:20 a.m. Detective McDermott memorialized all of Appellant's answers, which resulted in a ten-page statement from Appellant. The interview concluded at 2:14 p.m. and Detective McDermott gave Appellant the written statement to review and sign. Appellant reviewed the statement and signed the bottom of each page. *Id*. at 19.

Based on this testimony, the trial court denied Appellant's motion. *Id*. at 31. The trial court specifically points this Court to the following factors in support of its conclusion that the motion was denied properly.

> [Appellant]: 1.) was an adult; 2.) appeared to fully understand his rights and was competent; 3.) was not physically or mentally abused or promised anything; 4.) was given an opportunity to read his statement after it was completed and appeared to do so; 5.) signed each page of it; 6.) was not interviewed for a lengthy period of time; and 7.) knowingly, intelligently, and voluntarily gave the statement.

Trial Court Opinion, 11/9/2016, at 4-5.

We discern no error of law or abuse of discretion in the trial court's conclusions. Appellant, in custody on unrelated charges, was read *Miranda* warnings and questioned for approximately three hours. There is no indication that he was threatened or coerced in any fashion by Detective

McDermott.  Thus, we agree with the trial court that based upon the totality of the circumstances, Appellant's statement was given knowingly, intelligently, and voluntarily and therefore did not warrant suppression. ***See Commonwealth v. Harrell***, 65 A.3d 420, 435 (Pa. Super. 2013) (holding the trial court did not err in denying a motion to suppression where "[t]he totality of the circumstances indicate[d] that [Harrell] knowingly and voluntarily chose to waive his ***Miranda*** rights and make a statement").

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/11/2017